### YOUNG v. DAMERON & KENYON, Inc.
### No. 1208.

Court of Appeal of Louisiana. First Circuit.
Oct. 5, 1933.

F. J. Whitehead, of Port Allen, and Jos. A. Loret, of Baton Rouge, for appellant.

Bert E. Durrett and Chas. A. Holcombe, both of Baton Rouge, for appellee.

LE BLANC, Judge.

On October 27, 1928, the United States government, through the War (Engineer) Department, entered into a contract with Dameron & Kenyon, Inc., defendant herein, for the construction of the Alford levee in the Atchafalaya levee district (Front). The contract contemplated the placing of approximately 310,000 cubic yards of dirt, and the consideration is stated as being 23 cents per cubic yard, place measurement. The contract was made subject to approval by the Chief of Engineers, United States Army, which approval was given November 26, 1928. Article 16, paragraph (a), of the contract which regulates the method of payments to be made to the contractor stipulates that: "Unless otherwise provided in the specifications, partial payments will be made as the work progresses at the end of each calendar month, or as soon thereafter as practicable, on estimates made and approved by the contracting officer. * * *"

On October 12, 1928, by agreement between them, Dameron & Kenyon, Inc., sublet a portion of their work under the contract to Young & De Britton, a partnership composed of H. Martin Young, Jr., the plaintiff herein, and Newman H. De Britton. No specific quantity of the dirt to be placed by Young & De Britton is mentioned in the contract, the understanding being that they were to place as much as could be handled with the equipment they had on hand before the expiration of the main contract which was fixed as of January 31, 1929. The consideration stated in the subcontract is 21 cents per cubic yard, and it is provided that "payments are to be made in the same manner as your (Dameron & Kenyon, Inc.) payments are received from the U. S. Government on above mentioned work."

The subcontractors performed under their contract with Dameron & Kenyon, Inc., and claim to have placed 29,281.06 cubic yards of earth in the levee, which, at 21 cents per cubic yard, would amount to the sum of $6,149.02. Dameron & Kenyon, Inc., paid them the sum of $4,797.95. Having refused to pay any more, this suit was instituted by H. Martin Young, Jr., who, upon the dissolution of the partnership of Young & De Britton, had acquired all rights existing in its favor against Dameron & Kenyon, Inc., to recover the balance he claims to be due, or the sum of $1,351.07.

In his petition, plaintiff alleges that on a certain occasion a certain quantity of earth had been placed on the levee by the subcontractors and they were notified at once by Gordon Dameron, superintendent of the defendant corporation, that survey and measurements would have to be made at once as the defendant had to cover the work up with another fill or layer of dirt. That he and Gordon Dameron exerted every effort to locate a government engineer to make the measurement, without avail. That it was then agreed that they would secure the services of John J. Mundinger, a reputable and qualified civil engineer, to make the survey and measurement, which was done, and the said Mundinger did make the survey and measurement, being assisted therein by Gordon Dameron, himself. That Mundinger's computation was delivered to F. M. Heroy, Senior Draftsman of the District United States Engineers, for checking, and was found by the latter to be entirely accurate. It is on this measurement and survey that the plaintiff relies to recover the amount demanded by him.

In its answer, the defendant corporation denies that it owed any more than for 22,591 cubic yards of earth, the amount it paid the subcontractors for. The contention is that it had only to pay for the yardage that was measured by a government engineer and set-

tlement was made according to their estimates. Defendant denies that Gordon Dameron was a superintendent, but merely a foreman on the job and without authority to bind it in the survey alleged to have been made by Mundinger. Claiming that the plaintiff is indebted to it for several items aggregating the sum of $143.29, defendant reconvenes and prays for judgment in its favor and against the plaintiff for that amount.

The judgment of the lower court was in favor of the plaintiff and against the defendant for the sum of $1,282.18 and against the defendant on the reconventional demand, dismissing the same as not having been supported by proper proof. The district judge accounts for the difference in the amount prayed for by plaintiff and the sum awarded by showing that under the contract and in the prior settlement made between the defendant and the subcontractors there had been an allowance of 15 per cent. for shrinkage.

The defendant appealed from the judgment of the lower court, asking for a reversal on the main demand and that it recover on the reconventional demand, some of counsel engaged asking even that it be awarded more than double the amount prayed for. The plaintiff filed an answer to the appeal asking for an increase in the amount of the judgment to the original demand, but in view of a statement found in brief of his counsel that he accepts the amount of the judgment as rendered by the district judge, the answer to the appeal will be disregarded.

We do not find much difficulty in agreeing with the district judge that plaintiff is entitled to recover the amount decreed in the judgment from the defendant.

Contending for a strict interpretation of the contract, defendant's position is that, regardless of the amount of earth placed in the project by the plaintiff, it does not owe the latter anything unless a survey and measurement had been made by the government engineers. But it appears from the testimony in the case, as we understand it, that with the team equipment they had, the subcontractors could not complete any particular part of the work and it was necessary for the defendant to come behind them with a machine and cover up or lay additional dirt on the levee after they had left.

If any of this cover-up work was done before the earth placed by the subcontractors could be measured, it then became impossible to ever measure it separately from the finished unit. If the contractor kept right behind the subcontractors and was ready to cover up their work and no government engineer was available at once, it is not difficult to understand how an emergency might arise which might greatly inconvenience the contractor. It seems to have been just such an emergency which arose at the time it was found necessary to secure the services of Mr. Mundinger to take up and measure the subcontractors' work which forms the basis of plaintiff's claim. Such an emergency is shown to have occurred before, and on that occasion the dirt placed by the subcontractors was not even measured by a civil engineer, but by the men in charge of the work for the respective parties to the contract. These men were a man named Morris acting for the subcontractors and another named White representing the contractor. Payment was made by the defendant without questioning the measurement as made and without a word about a survey having to be made by a government engineer. In the same way, when this last emergency arose, the subcontractors did not take it upon themselves to employ Mundinger without notifying the defendant, and the proof is that Mr. Gordon Dameron himself, their man in charge, not only did not object but assisted in making the survey and expressed his pleasure at having the work done, no doubt, in our opinion, so that he could go on with his part of the job and finish it up.

Much is said about Mr. Gordon Dameron's authority to bind the defendant and about his being his company's superintendent on this job. Despite the denial of some of the officers of the defendant corporation that he was, the fair inference to be drawn from the evidence is that the subcontractors were justified in their belief that he was. His authority in directing the work both for his company and that of the subcontractors could easily lead to that understanding. It is significant to note, also, that Mr. Davis, the government engineer, does not hesitate to say that he was the defendant's superintendent. But plaintiff did not seem to care to rely entirely on Mr. Gordon Dameron's agreement. He even went to the president of the company himself, Mr. O. I. Dameron, and notified him that he was going to secure the services of Mr. Mundinger, and whilst Mr. Dameron did urge objection to the employment of Mr. Mundinger particularly, which as he admits he based on personal grounds, his account of what he otherwise told plaintiff on that occasion would rather lead to the inference that he consented to the work being taken up by some one other than a government engineer. His implied consent to that effect at the time and his contention now that he cannot be made to pay for the work until it has been measured by a government man appears a bit inconsistent, to say the least.

Plaintiff does not dispute the measurements and figures of the government engineers, but he does contend that they do not include the work done by him and his former partner and for which he is now seeking to recover of the defendant. The proof is positive that those figures did not include the 2,187 cubic yards

of dirt taken up under the measurement made by Morris and White, and it seems equally as clear to us that they did not include the survey and measurement made by Mundinger. That is the impression to be obtained from the testimony of Mr. Frank M. Heroy, chief draftsman for the New Orleans river district, whose duty it was to receive field notes of the work taken up and compute the yardage on which payment was made to the contractor. As a matter of fact, on March 9, 1929, he wrote plaintiff a letter in which he states: "I have checked over yardage of Alford New Levee as computed by Mr. Mundinger and find that his figure of 29281.06 is correct. According to our field surveys, the yardage computed and certified by us was 22591 a difference of 6690 yards which is due you from the Contractor, Dameron & Kenyon, Inc. * * *" Mr. Davis, the field engineer who took up the work for the government, does not deny that there may have been additional dirt placed by Young & De Britton after his last estimate which apparently was before December 15, 1928. He does say that he was informed that Mr. Mundinger had already made his measurements before the day on which he was there. Mr. Mundinger does not deny that he had been there in December and made a survey, but explains that in the first week in January, 1929, Mr. Young had him to go there again, and stated that as the weather had cleared up he had been able to put in two or three weeks' more work and during that time had placed in some additional yardage which he would like to have included in the original survey. That this additional work was done in January is further borne out by the pay rolls of the subcontractors covering the weeks of work referred to by Mundinger.

The testimony leaves no doubt in our minds that Young & De Britton put in more dirt in that levee than was included in the report of the government engineers and than for which they were paid by Dameron & Kenyon, Inc. The measurement made by Mr. Mundinger of what the additional quantity was is not contradicted nor is it seriously disputed.

The defendant was paid in full by the government for its work under the contract. In that payment was included the work done for them by Young & De Britton, and for which they have not been paid. To hold that the defendant would be entitled to retain the benefit of that work on the pretext of a noncompliance with the strict terms of the contract on the method under which payment was to be made, when it appears that the contract had been deviated from on this very same provision once before and that the deviation in this instance was impliedly, if not expressly, assented to, would be unsconscionable and wholly unfair. We believe that the claim of the plaintiff is just, that it has been support-

ed by proper proof, and correctly allowed under the judgment of the lower court.

On the reconventional demand made by defendant, we also agree with the learned trial judge that it is not supported by satisfactory proof. The fact that in brief of one of counsel for defendant the amount arrived at is more than double the one prayed for in the pleadings furnishes further indication of the uncertainty of the demand.

For the reasons stated, the judgment appealed from is affirmed, at the costs of the appellant.